**REMAND JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-3671-GW(AJWx) | Date | September 22, 2017 |
|---|---|---|---|
| Title | *Elizabeth Alvarado, et al. v. University of Southern California* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| None Present | None Present | |

**PROCEEDINGS:** **IN CHAMBERS - RULING ON DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S MOTION TO DISMISS COMPLAINT [16]**

Attached hereto is the Court's Final Ruling on the above-entitled motion. The case is ordered remanded back to state court forthwith.

:

Initials of Preparer   JG

The Court adopts its Tentative Ruling as its final decision on Defendant's motion to dismiss. However, defense counsel made an argument at the hearing on the motion which is address herein.

Defendant at oral argument contended that the Ninth Circuit's decision in the *Spokeo* case − *i.e.*, *Robins v. Spokeo*, 867 F.3d 1108 (9th Cir. 2017) ("*Spokeo I*") upon remand from the Supreme Court (*i.e.*, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ("*Spokeo II*") − mandates a holding here that there is Article III standing in this case even though the Plaintiffs have conceded that there is none under the present facts and law. Defendant is mistaken.

First, the *Spokeo* cases dealt with a provision in the Fair Credit and Reporting Act of 1970 ("FCRA") that required consumer reporting agencies to follow reasonable procedures for assuring maximum possible accuracy of consumer reports (*see* 15 U.S.C. § 1681e(b)), and imposed liability on "'[a]ny person who willfully fails to comply with any requirement [of the Act] with respect to any' individual, §1681n(a)." *Spokeo II*, 136 S. Ct. at 1542. In this lawsuit, Plaintiffs bring this action pursuant to the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), an amendment to the FCRA − specifically 15 U.S.C. § 1681c(g), which prohibits the electronic printing of more than the last five digits of a credit/debit card or its expiration date on any receipt provided to the cardholder at the point of sale. *See* Complaint ¶ 3, Docket No. 1-1 at 4 of 17. Thus, the statutory provisions are not the same.

Second, the Ninth Circuit's decision in *Spokeo I* does not support the conclusion that there is Article III standing in this case. In *Spokeo I*, the Ninth Circuit ultimately concluded that the plaintiff had alleged "injuries that are sufficiently concrete for the purposes of Article III." 867 F.3d at 1118. In reaching that conclusion, it was observed that:

> In *Spokeo II*, the Supreme Court made clear that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." 136 S. Ct. at 1549. Even then, "Article III standing requires a concrete injury." *Id*. To establish such an injury, the plaintiff must allege a statutory violation that caused him to suffer some harm that "actually exist[s]" in the world; there must be an injury that is "real" and not "abstract" or merely "procedural." *Id*. at 1548-49 (internal quotation marks omitted). In other words, even when a statute has allegedly been violated, Article III requires such violation to have caused some real − as opposed to purely legal − harm to the plaintiff.
> \*          \*          \*          \*
> Accordingly, while [plaintiff] may not show an injury-in-fact merely by pointing to a statutory cause of action, the Supreme Court also recognized that some statutory violations, alone, do establish concrete harm. As the Second Circuit has summarized, *Spokeo II* "instruct[s] that an alleged procedural violation [of a

1

statute] can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents 'a risk of real harm' to that concrete interest." *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016) (quoting *Spokeo II*, 136 S.Ct. at 1549).

\* \* \* \*

We have little difficulty concluding that these interests protected by FCRA's procedural requirements are "real," rather than purely legal creations. To begin, the Supreme Court seems to have assumed that, at least in general, the dissemination of false information in consumer reports can itself constitute a concrete harm . . . . Moreover, given the ubiquity and importance of consumer reports in modern life − in employment decisions, in loan applications, in home purchases, and much more − the real-world implications of material inaccuracies in those reports seem patent on their face.

*Id.* at 1112-14.

Here, as Defendant itself has argued, Plaintiffs have not sufficiently alleged any actual concrete harm to themselves as a result of Defendant's printing more than the last five digits of their credit/debit card numbers on their receipts. In the *Spokeo* cases, the consumer reports with the misinformation as to the plaintiff had been disseminated and were available to the public. In considering the adequacy of the plaintiff's averments as to injury, the Ninth Circuit analogized the situation to cases involving harm to one's reputation "like libel and slander per se" (*id.* at 1112) and concluded that:

[T]he relevant point is that Congress has chosen to protect against a harm that is at least closely similar in kind to others that have traditionally served as the basis for lawsuit. *See In re Horizon Healthcare*, 846 F.3d at 638-41. Courts have long entertained causes of action to vindicate intangible harms caused by certain untruthful disclosures about individuals, and we respect Congress's judgment that a similar harm would result from inaccurate credit reporting.

*Id.* at 1115.

In the present situation regarding the statutory prohibition against the inclusion of more than five digits from a credit/debit card on electronically generated receipts, the danger (that was the concern of Congress) is identity theft. *See Stelmachers v. Verifone Systems, Inc.*, Case No. 5:14-cv-04912-EJD, 2017 WL 3968871 *1 (Sept. 9, 2017, N.D. Cal.) (FACTA's "purpose was to assist in the prevention of identity theft, which Congress recognized had by that time reached 'epidemic proportions.' H.R. Rep. No. 108-263, at 25 (2003)."). However, as held by the Supreme Court in *Spokeo II*, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that

2

right." 136 S. Ct. at 1549. In other words, Congress' judgment that there should be a legal remedy for the violation of the statute does not mean each statutory violation creates an Article III injury. *See Meyers v. Nicolet Restaurant of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016). Unlike the public dissemination of false information in consumer reports in the *Spokeo* cases, the handing over of a credit card receipt with the offending excess number of digits to the cardholder does not create a sufficient risk of harm to the underlying concrete interest Congress sought to protect, but merely a speculative one. *See generally Stelmachers*, 2017 WL 3968871 at *3.

That is not to say that it would be absolutely impossible for the Plaintiffs to actually allege such concrete injury. However, Plaintiffs appear to have conceded that, under the applicable federal law, they cannot do so. The discussion of this issue in *Stelmachers* is instructive:

> [T]he basic factual allegations [are]: Plaintiff took a cab ride, paid with a credit card, and was given a receipt displaying more than the last five digits of his credit card number. Plaintiff still has the receipt . . . . Plaintiff does not allege that anyone saw the receipt he was given. Plaintiff, and no one else, "received" it.
>
> Some factual allegations have been added. As context for his awareness of FACTA's requirements, Plaintiff states he is employed "in the sales of electronic point-of-sale devices." SAC, at ¶ 20. Because of this specialized knowledge, Plaintiff alleges "he is aware of the risks that arise from the use of point-of-sale devices, including the risk of identity theft," and has previously been the victim of identity theft. *Id.* at ¶¶ 24, 25. Thus, when Plaintiff was given a non-compliant receipt, [defendant] allegedly burdened him "with the unnecessary fear and risk of identity theft, and the duty to consistently check his credit card statements, so as to make certain that identity thieves did not take advantage" of the FACTA violation, "thereby wasting Plaintiff's time." *Id.* at ¶ 92. Plaintiff also alleges [defendant] burdened him with the obligation to check other receipts printed on [defendant's] devices to determine their FACTA compliance, and "make known to its staff and possibly others Plaintiff's private credit card information." Id. at ¶¶ 90, 91.
>
> The [amended complaint]'s allegations fare no better than its predecessor under *Spokeo* . . . because Plaintiff still has not plausibly identified a concrete, certainly impending injury resulting from the non-compliant receipt. Identity theft does not become certainly impending through a procedural violation of FACTA; additional facts must be alleged. The newly-described "burden of vigilance" fails in that regard because the actual harm Plaintiff seeks to avoid by checking credit card statements and receipts − identity theft − is merely a possible, and seemingly unlikely, future injury based on the allegations . . . . Since Plaintiff, being keenly

3

aware of FACTA's truncation requirement, "discovered the violation immediately and nobody ever saw the non-compliant receipt," and indeed is still in possession of the receipt, the "low tech" theft described in the SAC could occur only if one of a litany of speculative events comes about, all of which require someone or something obtaining information from a receipt over which Plaintiff has absolute control . . . . Stated another way, the SAC does not adequately explain how [defendant's] alleged procedural violation of FACTA "presents a material risk of harm to the underlying concrete interest Congress sought to protect" by elevating the likelihood of identity theft from just possible to certainly impending status . . . . And to be sure, Plaintiff cannot "manufacture" standing by inflicting a burden on himself out of a fear of future identity theft that is nothing more than a remote prospect. *See Clapper*, 568 U.S. at 416.

      Nor does the suggestion that [defendant] may have exposed Plaintiff's credit card number to "its staff and possibly others" alter the analysis. FACTA was not enacted to protect consumer's private information from credit card processors, but was "intended to 'reduce the amount of potentially misappropriateable information produced in credit and debit card receipts.' " *Meyers*, 843 F.3d at 725 (quoting *Meyers v. Oneida Tribe of Indians of Wis.*, 836 F.3d 818, 820 (7th Cir. 2016)). This allegation, like those already discussed, does not demonstrate a material risk to the concrete interest that Congress sought to protect through FACTA.

    For the reasons stated above, this Court rejects Defendant's argument made at the hearing today that the Ninth Circuit's decision in *Spokeo I* establishes or otherwise requires a finding that Plaintiffs have Article III standing in this case. The Court concludes that Plaintiffs do not have Article III standing here and, hence, this Court lacks subject matter jurisdiction over the action. Pursuant to 28 U.S.C. § 1447(c), the case is hereby ordered remanded back to state court forthwith.